IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

TIANA M. SANDERS,             )
                                )
     Plaintiff,         )
                                )
v.                           )       No. 19-2831-TLP-tmp
                                )
FEDERAL EXPRESS CORPORATION,  )
                                )
     Defendant.        )

---

### REPORT AND RECOMMENDATION

---

On December 3, 2019, plaintiff Tiana Sanders filed a *pro se* complaint against Federal Express Corporation ("FedEx"), her former employer, and multiple FedEx employees seeking damages for claims of race and sex discrimination and retaliation for engaging in protected activity. (ECF No. 1.) The individual employees have since been dismissed and FedEx is the only remaining defendant. (ECF No. 14.) Before the court is FedEx's Motion for Summary Judgment, filed on December 15, 2021.[1] (ECF No. 84.) Sanders did not respond to the motion or to an order to show cause entered by the court after her initial response deadline had passed. (ECF No.

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

33.) For the below reasons, the undersigned recommends that FedEx's Motion for Summary Judgment be granted.

## I.   PROPOSED FINDINGS OF FACT

Tiana Sanders, who is an African-American woman, began working for FedEx on January 20, 2014, as a part-time Handler.[2] (ECF No. 32 at 1.) She was promoted multiple times over the next four years, first to Material Handler and then finally to Ramp Agent on October 28, 2017. (Id. at 1-2.) All of her jobs involved loading, unloading, and sorting shipments at the FedEx hub in Memphis, Tennessee. (Id.)

Although Sanders was slowly given more responsibilities, she also faced multiple instances of discipline. She received two Warning Letters in 2014 for failing to work as directed. (Id. at 1.) On August 4, 2016, she received a Warning Letter for a "Serious Safety Violation" after hitting an aircraft while operating a loader. (Id. at 2.) Sanders admitted to the accident; however, she claimed that it was due to improper directions from her loader guide. (ECF No. 32-1 at 17.) On October 18, 2017, she received another Warning Letter and a three-month suspension due to "inappropriate behavior while visiting a FedEx facility in Dubai."

---

[2]Since Sanders did not respond to the motion, the following facts are taken exclusively from FedEx's Statement of Undisputed Material Facts and are considered undisputed for purposes of summary judgment. W.D. Tenn. Civ. R. 56.1(d).

(ECF No. 32 at 2; ECF No. 32-1 at 23). Sanders found this Warning Letter "weird" and refused to sign it because "all that stuff wasn't true." (ECF No. 32-1 at 23-24.) Despite these prior Warning Letters, she was promoted to Ramp Agent, a "leadership position" that is "responsible for properly loading and unloading FedEx aircraft." (Id.) As a Ramp Agent, she received one more Warning Letter for a Serious Safety Violation after striking a baggage cart with a loader on May 5, 2018. (Id.)

While Sanders contests some of the company's justifications for the above discipline, she does not allege that it was discriminatory. She instead alleges that the discrimination began in December 2018. That month, Sanders applied for two open Manager Hub Ops positions through FedEx's internal hiring system. (Id. at 2, 4.) One position reported to hiring Manager Patrick Whalen and the other reported to hiring Manager Christi Free. (Id.) Both applications required Sanders to turn in "a packet of required documentation" and noted that "late or incomplete packets will not be considered." (Id.) The job posting included "posting codes" that corresponded to different documents and information that needed to be included in the packet. (Id. at 2.) Sanders did not understand what the posting codes meant when asked during her deposition. (Id. at 2-4.) While Sanders had "at least three or four people" look over her packet to ensure it was filled out

- 3 -

correctly, (ECF No. 32-1 at 29-30), she nonetheless failed to
include a required "scholastic transcript" with the packet that
she submitted for both positions. (ECF No. 32 at 2-4.) Amber Tate,
a Human Resources Advisor, performed the initial review of both
packets "for completeness and to ensure the applicants met the
required qualifications for the position." (Id. at 3.) This
included reviewing the applicants for any "active job-related
discipline." (Id.) Due to Sanders's incomplete packet and the
active Warning Letter from the May 5 incident, she was "determined
to be ineligible for an interview" for both positions. (Id.)
However, Sanders believed that she was not given an interview due
to her sex and out of retaliation for her prior appeals of Warning
Letters. (Id. at 4.) Ultimately, both positions were filled by
black male employees. (Id. at 3, 5.)

Other instances of discipline followed these rejections and
discipline became more common as well. On January 15, 2019, Sanders
received a Warning Letter for another Serious Safety Violation
after a "unit load divider (ULD container) dropped off the dolly
she was driving" when the locks securing it failed. (Id. at 5-6.)
FedEx's investigation determined that Sanders had "used an
obviously damaged dolly to transport containers to the aircraft
gate" in violation of company policy, (ECF No. 32-1 at 143), but
Sanders felt that the warning was unfair due to her belief that

- 4 -

many other employees dropped containers and were not written up. (Id. at 55-57.) Sanders internally appealed this letter but did not allege that it had been issued due to her race or sex. (ECF No. 32 at 6.)

Troubles continued into the next year. In February and March 2019, Sanders was formally counseled by management three times. (Id. at 6-7.) First, on February 28, 2019, at roughly 4:30 p.m., Sanders was instructed to clean the loading lot gates and then clock out. (Id. at 6.) Rather than immediately cleaning the gates, Sanders finished working on her appeal of a previous Warning Letter and ultimately clocked out at 7:17 p.m. (Id.) Sanders was counseled about staying overtime, but insisted she was told to clean the gates after she got done with what she was working on. (Id. at 6-7; ECF No. 32-1 at 68.) At her deposition, she could not account for why she clocked out so late. (ECF No. 32-1 at 68.) Second, on March 12, 2019, Sanders was counseled about instances of "taking her break at inappropriate times," which she had been warned about previously by Manager Rachael Kirkpatrick. (ECF No. 32 at 6.) At her deposition, Sanders did not deny the incident or prior warning, but insisted she was the only employee with a scheduled break. (ECF No. 32-1 at 62.) Lastly, on March 21, 2019, Sanders was counseled after she repeatedly asked an employee to perform multiple tasks they were not qualified to do during an onload.

(ECF No. 32 at 7.) Sanders denied that she made these requests.
(ECF No. 32-1 at 72.)

A month after the repeated counseling, Sanders filed a Charge
of Discrimination with the EEOC, alleging that FedEx's conduct
between December 6, 2018, and April 4, 2019, amounted to race and
sex discrimination. (ECF No. 32 at 7.) Further, she alleged
retaliation stemming from her internal appeals of multiple Warning
Letters. (ECF No. 32-1 at 46-47.) Less than two weeks later, on
May 3, 2019, Sanders received yet another Warning Letter from
Kirkpatrick for failing to work as directed, this time for refusing
to perform Load Captain responsibilities despite being ordered to
do so. (ECF No. 32 at 7.) The incident in question took place on
April 21, 2019. (Id. at 8.) Sanders insisted at her deposition
that Kirkpatrick's request was against company policy.
(ECF No. 32-1 at 78-79.) Since this was Sanders's third Warning
Letter in a twelve-month period, she was demoted from Ramp Agent
to Material Handler and considered ineligible for any leadership
positions for the next twelve months. (ECF No. 32 at 7.)

In her new position, "Sanders'[s] primary duties related to
sorting freight on the different belts at the Memphis Hub." (Id.
at 8.) Once her sorting was complete, she was to report to a
manager for "post sort aircraft assignment" and expected to clock
out after being released from the post sort. (Id.) However, Sanders

- 6 -

did not consistently clock out when released, "stay[ing] on the clock without obtaining Management permission" on June 2, 4, and 6. (Id.) At her deposition, Sanders claimed that on June 2 an unidentified Manager told her the team "didn't have anything to do," and she instead worked on the internal appeal of a prior Warning Letter. (Id.) The June 4 incident stemmed from her staying late to complete required training, even though the training did not have to be done at that exact time. (Id. at 9.) Because of these incidents, on June 26, 2019, Manager Gautam Malhotra issued Sanders a Warning Letter/Termination that terminated her employment due to the three prior "notification[s] of deficiency within the past months." (Id. at 8.) After her termination, Sanders amended her charge with the EEOC to include these incidents, which she claimed were motivated by race and sex discrimination as well as retaliation for filing the initial charge. (Id. at 9.)

Sanders received a right to sue letter from the EEOC on September 11, 2019, and filed the present suit on December 3, 2019, proceeding *pro se*. (ECF No. 1.) On December 15, 2021, FedEx filed a Motion for Summary Judgment. (ECF No. 31.) Sanders did not respond to the motion or to the show cause order which provided her an additional two weeks to respond. (ECF No. 33.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

- 7 -

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991).

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible, unsworn hearsay in deciding a motion for summary judgment. Tranter v.

- 8 -

Orick, 460 F. App'x 513, 514 (6th Cir. 2012). In order to defeat
summary judgment, the party opposing the motion must present
affirmative evidence to support its position; a mere "scintilla of
evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240,
247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). "In making
this assessment, [the court] must view all evidence in the light
most favorable to the nonmoving party." McKay v. Federspiel, 823
F.3d 862, 866 (6th Cir. 2016). These standards apply regardless of
a party's *pro se* status; "the liberal pleading standard for *pro se*
parties is 'inapplicable' 'once a case has progressed to the
summary judgment stage.'" George v. Whitmer, No. 20-12579, 2021 WL
1976314, at *2 (E.D. Mich. May 18, 2021) (quoting Tucker v. Union
of Needletrades, Indus., & Textile Employees, 407 F.3d 784, 788
(6th Cir. 2005)). A *pro se* party's opposition to a motion for
summary judgment cannot rely on "mere allegations and unsworn
filings" but must instead "set out specific facts showing a genuine
issue for trial through affidavits or otherwise" just like any
other response. Id. (citing Viergutz v. Lucent Techs., Inc., 375
F. App'x 482, 485 (6th Cir. 2010)).

**B.   Title VII Discrimination Claims**

Plaintiffs may attempt to prove their discrimination claims
in one of two ways. First, they may advance direct evidence of
discrimination, or evidence that "if believed, *requires* the

- 9 -

conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Kostic v. United Parcel Serv., Inc., 532 F. Supp. 3d 513, 527 (M.D. Tenn. 2021) (emphasis added). Direct evidence includes, among other things, blatant discriminatory statements of intent to take adverse actions against the plaintiff. See, e.g., Brewer v. New Era, Inc., 564 F. App'x 834, 839 (6th Cir. 2014) (direct evidence of discrimination where a decisionmaker declared plaintiffs were "too old" and "needed to retire"). In cases where the plaintiff produces direct evidence of discrimination, the burden is shifted to the defendants to prove that they would have taken the same actions "even if [they] had not been motivated by impermissible discrimination." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

Sanders does not present direct evidence but instead relies on circumstantial evidence of discrimination. "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." White v. Baxter Healthcare Corp, 553 F.3d 381, 391 n.5 (6th Cir. 2008) (citing Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997)). Where only circumstantial evidence exists, courts use the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to evaluate claims. Under McDonnell

*Douglas*, the plaintiff must first establish a *prima facie* case of discrimination by demonstrating that 1) they are a member of a protected class, 2) they were qualified for their job and performed it satisfactorily, 3) despite their qualification and performance, they suffered an adverse employment action, and 4) they were "replaced by a person outside the protected class or were treated less favorably than a similarly situated person outside [the] protected class." *Wingo v. Michigan Bell Tel. Co.*, 815 F. App'x 43, 45 (6th Cir. 2020) (citing *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015)). Making a *prima facie* case "is a burden easily met" by the plaintiff, after which the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for the adverse action." *Wheat*, 785 F.3d at 237. If the defendant can do so, then the plaintiff must prove that the reasons provided were "mere pretexts for prohibited discrimination." *Id.* (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

    1.   <u>Discrimination in Discipline</u>

FedEx argues that Sanders cannot demonstrate the second and fourth elements of her *prima facie* case regarding the discipline she received between December 2018 and June 2019, which includes her demotion and firing. First, they argue that Sanders did not perform her job satisfactorily, as evidenced by her long

- 11 -

disciplinary record. (ECF No. 31 at 10.) However, FedEx also points
to Sanders's disciplinary record as justification for their
refusal to hire her for management jobs and their decision to
terminate her employment. As the Sixth Circuit has previously
stated regarding the qualification element:

> A court may not consider the employer's alleged
> nondiscriminatory reason for taking an adverse
> employment action when analyzing the prima facie case.
> To do so would bypass the burden-shifting analysis and
> deprive the plaintiff of the opportunity to show that
> the nondiscriminatory reason was in actuality a pretext
> designed to mask discrimination.

Guyton v. Exact Software N. Am., No. 2:14-CV-502, 2016 WL 3927349,
at *8 (S.D. Ohio Jul. 21, 2016) (quoting Wexler v. White's Fine
Furniture, Inc., 317 F.3d 564, 574-75 (6th Cir. 2003)). Instead,
"a prima facie case looks to objective qualifications, like an
employment contract, over subjective qualifications like
affidavits attesting to an employee's proficiency." Flowers v.
WestRock Servs., Inc., 979 F.3d 1127, 1131 (6th Cir. 2020). FedEx's
argument presents exactly the issue that the Wexler court cautioned
against: they point to Sanders's disciplinary record as evidence
that she did not perform her job satisfactorily while Sanders
argues that her disciplinary record *is* the discrimination she faced
despite performing her job satisfactorily. Objective indicators
such as Sanders's resume and multiple promotions reflect that, for

- 12 -

purposes of showing a *prima facie case*, she was qualified for her job as a Ramp Agent.

Next, FedEx argues that Sanders has not demonstrated that she was "treated less favorably than a similarly situated person outside [the] protected class" regarding the discipline she received. <u>Wingo</u>, 815 F. App'x at 45. "Similarly situated means that the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." <u>Parries v. Makino, Inc.</u>, 148 F. App'x 291, 296 (6th Cir. 2005) ("To establish disparate treatment, the plaintiff must show that he was similarly-situated in all relevant aspects to the comparable worker") (citing <u>Mitchell v. Toledo Hosp.</u>, 964 F. 2d 577, 582-83 (6th Cir. 1992) (internal quotation marks omitted)). Specific facts are critical to this determination, including "the disciplinary history of a plaintiff" as compared to the proposed comparator where a progressive discipline system is used. <u>Wingo v. Michigan Bell Tel. Co.</u>, No. 16-cv-12209, 2019 WL 78898, at *8 (E.D. Mich. Jan. 2, 2019) (citing <u>Berry v. City of Pontiac</u>, 269 F. App'x 545, 549 (6th Cir. 2008)).

- 13 -

FedEx argues Sanders has not provided specific facts, noting that "the only alleged comparators [Sanders] specifically mentions relate to the Warning Letter she received on January 15, 2019" and that "she admits knowing little or nothing about the circumstances or facts relating to those alleged incidents."[3] (ECF No. 32 at 11.) FedEx is correct. Sanders has not provided enough evidence to raise a genuine issue of material fact regarding any disparate treatment. In her deposition Sanders noted that three other black males and one white woman had similarly dropped cargo. (ECF No. 32-1 at 49) ("Why did it - - they not deal with those three black males? Why didn't they just deal with the Caucasian lady when she dropped the can? As opposed to dealing with me like - -"); (Id. at 52) (Q: "What other people are you talking about?" A: "I think his name was Terrence Smith. DeAngelo Oliver . . . I think her name is Randy James . . . I don't think he - - he got a Warning Letter.") She also remembered an incident, possibly in 2019, when James, a white

---

[3]Sanders's lengthy amended complaint lists various comparators who she contends were not disciplined for making the same mistakes she made. (See generally ECF No. 9.) However, "once a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Talismanic Properties, LLC v. Tipp City, Ohio, 309 F. Supp. 3d 501, 507 (S.D. Ohio 2017) (quoting Viergutz v. Lucent Techs., Inc., 375 F. App'x 482, 485 (6th Cir. 2010)). Sanders did not respond to the motion for summary judgment or submit any affidavits or evidence. The portions of her sworn deposition that FedEx relies on is the only evidence the court may consider on her behalf.

- 14 -

woman, "didn't check her locks and she drove off and [the cargo] just came off" for which "there was no reprimand." (Id. at 54.) However, the law requires more. Sanders cannot provide details of who supervised these employees, what the exact circumstances regarding the dropped cargo were, and whether they had similar disciplinary histories to her. These are necessary facts to determine if the proposed comparators are truly similar in "all relevant respects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998). The burden of demonstrating a p*rima facie* case is not onerous, but "threadbare allegations, supported only by [] general impressions . . . are not enough to establish a viable case of discrimination." Wingo, 815 F. App'x at 46.

Even if Sanders had stated a *prima facie* case, FedEx has articulated a legitimate non-discriminatory reason for their actions: Sanders's continuous performance related issues and FedEx's stated policy that employment may be terminated after three Warning Letters within a twelve-month period. To survive summary judgment Sanders must present enough evidence to create a genuine issue of material fact over whether this justification: (1) had no basis in fact; (2) did not actually motivate the adverse actions, or (3) was insufficient to warrant the adverse actions. Sharp v. Aker Plant Servs. Grp., Inc., 600 F. App'x 337, 344 (6th Cir. 2015). Sanders admitted to the underlying conduct of almost every

- 15 -

incident for which she was cited and does not argue that her record
has no basis in fact. (ECF No. 32-1 at 58) (Q: "And you admit that
on January 6, 2019, a unit load divider or device or better known
as ULD container dropped off the dolly you were driving into an
aircraft gate, correct?" A: "Yes."); (Id. at 64) (Q: "Did Rachael
Kirkpatrick have a discussion with you about the fact that you
needed to take your break at about 10:30 each day?" A: "Yeah.");
(Id. at 68) (Q: "And then it says you did not clock out until
19:17; is that correct?" A: "Yeah, I had to do my [internal Warning
Letter appeal] and then I went to go do the gates." . . . Q:
"[W]hat happened to the other . . . two hours and 15 minutes?" A:
"I don't know."); (Id. at 79) (Q: "Okay. But after she asked you
to perform the upper load captain functions, then you didn't do
that; is that fair?" A: "Yes, because I did not feel comfortable
because it wasn't in policy.") Sanders argues that she was unfairly
targeted in these incidents because "when it came to me, they would
make different rules," and that "a lot of [the] same people were
doing the same stuff I was doing, and they weren't getting in
trouble for it," (ECF No. 32-1 at 91), but these explanations
amount to "mere personal beliefs, conjecture, and speculation
[which] are insufficient to support an inference of . . .
discrimination." (ECF No. 31 at 11-12) (quoting Grizzell v. City
of Columbus Div. of Police, 461 F.3d 711, 724 (6th Cir. 2006)).

- 16 -

For example, when asked why she believed her termination was due
to her race, Sanders merely stated that her manager "[had] this
perception of me already. He was already coming at me. Like it was
just weird . . . Just the way he was interacting on me, and I
notice how he was interacting with other people." (ECF No. 31-2 at
88.) She could not provide any other reason or details. Even
viewing the facts in the light most favorable to her, Sanders has
not presented a genuine issue of material fact as to whether
FedEx's discipline and compliance with their three Warning Letter
policy were mere pretexts.

### 2.    Discrimination in Failure to Promote/Hire

Sanders argues that FedEx's failure to promote/hire her for
an open Manager Ops position in December 2018 was discriminatory
as well. The company argues that Sanders cannot make a *prima facie*
case of discrimination, since she was ineligible for the positions
due to her active Warning Letter and failure to correctly complete
the applicant packet. The test here is the same as above: Sanders
must show that she was a member of a protected class, qualified
for the job, suffered an adverse employment action, and that the
job went to someone outside her protected class. Serrano v. Cintas
Corp., 699 F.3d 884, 893 (6th Cir. 2012).

Sanders cannot demonstrate that she was qualified for a
Manager position. The postings for both positions noted that "late

- 17 -

or incomplete packets will not be considered." (ECF No. 32-1 at 121, 139.) While Sanders notes that she had other employees look over her packet, they incorrectly advised her on what documentation was required. (Id. at 29-30.) Multiple other candidates, including a white male applicant, had "similar deficiencies and were also determined to be ineligible for an interview." (ECF No. 32-2 at 2-3.) Sanders has not produced any evidence to create a genuine issue of material fact regarding her qualifications for the position or that other candidates outside of her protected class were treated more favorably.

## C.   Title VII Retaliation Claims

Sanders also alleges that her demotion and eventual termination were not just the result of racial discrimination, but of retaliation for filing a Charge of Discrimination with the EEOC on April 22, 2019. (ECF No. 1.) Retaliation claims under Title VII are governed by a similar burden shifting structure as discrimination claims:

> To establish a prima facie case of retaliation a
> plaintiff must establish that: (1) she engaged in a
> protected activity; (2) her exercise of such protected
> activity was known by the defendant; (3) thereafter, the
> defendant took an action that was materially adverse to
> the plaintiff; and (4) a causal connection existed
> between the protected activity and the materially
> adverse action.

Rogers v. Henry Ford Health System, 897 F.3d 763, 775 (6th Cir. 2018) (citing Laster v. City of Kalamazoo, 749 F.3d 714, 730 (6th Cir. 2014) (internal quotation marks omitted)). The last element is satisfied "where an adverse employment action occurs very close in time after an employer learns of a protected activity."[4] Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008). FedEx does not contest the first three elements; instead they argue that "Sanders admits that she cannot articulate any reason for her belief that she was retaliated against for filing her Charge of Discrimination." (ECF No. 31 at 13.)

When asked why she believed retaliation motivated her termination, Sanders admitted that no one at FedEx said anything about her having filed a Charge of Discrimination. (ECF No. 32-1 at 94.) She ultimately answered by recounting that the EEOC had told her that FedEx was "going to find a way to get [her] out of there." (Id. at 93.) Regardless, Sanders's demotion and firing came only two weeks and two months, respectively, after filing her charge. This is "sufficient temporal proximity to establish a causal connection." Rogers, 897 F.3d at 776-77 (citing Seeger v.

---

[4]While temporal proximity suffices for causation at the *prima facie* case stage, it "cannot be the sole basis for finding pretext" and must be "accompanied by some other independent evidence." Briggs v. Univ. of Cincinnati, 11 F.4th 498, 516 (6th Cir. 2021) (citing Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285 (6th Cir. 2012)).

Cincinnati Bell Tel. Co., 681 F.3d 274, 283-84 (6th Cir. 2012)
(collecting cases holding that a two-to-three-month lapse between
the protected activity and adverse action is sufficient at the
*prima facie* case stage)). Pursuant to Sixth Circuit precedent, the
undersigned finds that Sanders has alleged enough for a *prima facie*
case of retaliation.

However, much like with her discrimination claims, Sanders
has not created a triable issue of material fact over whether
FedEx's legitimate, non-discriminatory reasons for demoting and
firing her are merely pretext. This burden is met if the plaintiff
can show "(1) that the proffered reasons had no basis in fact, (2)
that the proffered reasons did not actually motivate the employer's
action, or (3) that they were insufficient to motivate the
employer's action." Tingle v. Arbors at Hilliard, 692 F.3d 523,
530 (6th Cir. 2012) (citing Romans v. Michigan Dep't. of Human
Servs., 668 F.3d 826, 839 (6th Cir. 2012)). FedEx states that they
demoted and fired Sanders due to her repeated Warning Letters,
with her firing coming after her third Warning Letter within twelve
months per company policy. Sanders has not advanced any evidence
that these letters had no basis in fact; she admitted to much of
their underlying conduct. Supra § B.1. She has failed to show that
her disciplinary violations were not FedEx's true motive, as she
did not dispute that she "cannot articulate a reason for [her]

belief other than being told by the EEOC that [FedEx is] going to be after [her] for this." (ECF No. 32 at 9.) Finally, she has not shown that her disciplinary violations are insufficient to explain her termination. FedEx followed their stated policy in both her demotion and eventual firing, and the ultimate burden to show that they were instead motivated by a desire to retaliate rests with Sanders. She has not pointed to any evidence to support her claim and thus has not created a genuine issue of material fact on the issue.

### III. RECOMMENDATION

Based on the above, the undersigned recommends that the Motion for Summary Judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

February 8, 2022
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**